IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE BYJU'S ALPHA, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Bankr. No. 24-10140 (BLS) |
| | ) | |
| BYJU'S ALPHA, INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | Adv. No. 24-50013 (BLS) |
| | ) | |
| GLAS TRUST COMPANY, LLC, | ) | |
| | ) | |
| Intervenor-Plaintiff-Appellee, | ) | |
| v. | ) | C.A. No. 25-322 (MN) |
| | ) | C.A. No. 25-854 (MN) |
| CAMSHAFT CAPITAL FUND, LP, CAMSHAFT CAPITAL ADVISORS, LLC, CAMSHAFT CAPITAL MANAGEMENT, LLC, AND RIJU RAVINDRAN, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

# MEMORANDUM OPINION

Richard J. Corbi, THE LAW OFFICES OF RICHARD J. CORBI PLLC, New York, NY; Julia B. Klein, KLEIN LLC, Wilmington, DE—Counsel for Appellants Camshaft Capital Fund, LP, Camshaft Capital Advisors, LLC, and Camshaft Capital Management LLC.

Pieter Van Tol, VAN TOL LAW PLLC, Brooklyn, NY; Julia B. Klein, KLEIN LLC, Wilmington, DE—Counsel for Appellant Riju Ravindran.

William B. Adams, Benjamin Finestone, QUINN ENAMUEL URQUHART & SULLIVAN, LLP, New York, NY; Robert S. Brady, Kenneth J. Enos, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE—Counsel for Appellee BYJU's Alpha, Inc.

George W. Hicks, Jr. P.C., KIRKLAND & ELLIS LLP, Washington, DC; Laura Davis Jones, Peter J. Keane, PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE—Counsel for Intervenor-Appellee GLAS Trust Company, LLC.

September 8, 2026
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE

Before the Court are the consolidated appeals[1] of four related orders entered by the Bankruptcy Court in an adversary proceeding brought by chapter 11 debtor, BYJU's Alpha, Inc. ("the Debtor") and intervenor GLAS Trust Company, LLC ("GLAS" and together with the Debtor, "the Plaintiffs"), against appellants Riju Ravindran ("Ravindran") and Camshaft Capital Fund, LP ("Camshaft Fund"), Camshaft Capital Advisors, LLC, and Camshaft Capital Management LLC (together "Camshaft," and together with Ravindran, "the Defendants") as well as against Think & Learn Private Ltd. ("T&L") and Inspilearn LLC ("Inspilearn"). The complaint sought recovery of funds loaned to the Debtor and transferred by the Debtor to third-parties at the direction of Ravindran, funds which have not been located to this day, despite the Bankruptcy Court's many orders and sanctions.

By its Memorandum Opinion and Order dated February 27, 2025 (Adv. D.I. 382; A12439-472) ("MTD Order"), the Bankruptcy Court denied the motions to dismiss the adversary proceeding filed by both Camshaft and T&L. By its Memorandum Opinion (Adv. D.I. 383; A12690-732) ("SJ Opinion") dated February 27, 2025, the Bankruptcy Court granted Plaintiffs' motion for partial summary judgment (Adv. D.I. 294; A09726-798) ("SJ Motion") against Ravindran and Camshaft, on counts for actual fraudulent transfer, breach of fiduciary duty, declaratory judgment, and conversion. By its order dated March 14, 2025 (Adv. D.I. 388) (A12733-736) ("Judgment"), the Bankruptcy Court

---

1 By stipulation of the parties, these appeals were consolidated under lead case C.A. 25-322 (MN) (D.I. 20), the docket of which is cited herein as "D.I. __." The docket of the adversary proceeding, *BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP, et al.*, Adv. No. 24-50013 (BLS), is cited herein as "Adv. D.I. __," and the docket of the chapter 11 case, *In re BYJU's Alpha, Inc.*, No. 24-10140 (BLS), is cited herein as "Bankr. D.I. __." The parties' joint appendix (D.I. 23-25, 28) is cited herein as "A__." The Declaration of Benjamin I. Finestone, filed in support of the SJ Motion (Adv. D.I. 277) (A07142-9081) is cited herein as "Finestone Decl. Ex. __." The background, taken largely from the SJ Opinion, is undisputed unless otherwise noted.

entered monetary judgment against Defendants along with a declaratory judgment that the unauthorized transfer of certain funds by Ravindran is void. Finally, by its memorandum order dated July 8, 2025 (Adv. D.I. 483; A14442-449) ("Amendment Denial Order," and together with the MTD Order, the SJ Opinion, and the Judgment, "the Orders"), the Bankruptcy Court denied the Defendants' motion to reconsider. For the reasons set forth below, the Orders will be affirmed.

# I. BACKGROUND

## A. The First Transfer To Camshaft Fund (April-July 2022)

The Debtor was incorporated in Delaware in September 2021. (SJ Op. at 2). It was formed as a special purpose vehicle by its parent company, T&L to raise funds for the expansion of "BYJU's," a corporate conglomerate indirectly owned by T&L, based in India. (*Id.*). Ravindran was the Debtor's sole director and an officer from September 2021. (*Id.*). In November 2021, the Debtor borrowed $1.2 billion in five-year term loans ("the Term Loans") from a consortium of lenders ("the Lenders") in accordance with a Credit Agreement. (*Id.*). Ravindran signed the Credit Agreement on behalf of the Debtor (as borrower) and various affiliates including T&L (as guarantors). (*Id.*). GLAS, the Lenders' administrative and collateral agent, also signed the agreement. (*Id.*). Within months, the Debtor and its affiliates failed to satisfy certain loan covenants, such as furnishing required financial statements and failing to add a subsidiary as a guarantor of the Term Loans. (SJ Op. at 2-3; A07436-37, A07440-41). The defaults entitled the Lenders to accelerate the Term Loans and exercise remedies. Within weeks of the defaults, the Debtor made a series of wire transfers to Camshaft Fund totaling $533 million ("the First Transfer"). (SJ Op. at 3). After the First Transfer, the Debtor had approximately $131,542,108.16 in available funds and no other known assets. (SJ Op. at 4).

In exchange for the $533 million funds constituting the First Transfer ("the Alpha Funds"), the Debtor received a limited partnership interest in Camshaft Fund ("the Camshaft LP Interest").[2] (SJ Op. at 3-4). Upon receipt of the Alpha Funds, Camshaft disbursed those funds in the form of "loans" to OCI Limited ("OCI"), which holds itself out as a British supply chain specialist, pursuant to at least three promissory notes for which the Debtor, not Camshaft, bore the full risk of default. (*Id*. at 4). Ravindran signed side letters for each promissory note on the Debtor's behalf. (*Id*.; A09358). The record contains no evidence that OCI has made any repayments on any of the notes. (A08044-57). The First Transfer and the concurrent loans to OCI were made without the Lenders' knowledge or approval. (SJ Op. at 4). Ravindran and T&L (on whose board Ravindran sat) concealed the First Transfer from the Lenders for months and actively mislead the Lenders into believing the Alpha Funds remained in the Debtor's bank accounts in cash or cash equivalents. (*Id*.).

**B. <u>The Transfer To Inspilearn (March 2023)</u>**

After the First Transfer, the Debtor continued to default under the Credit Agreement. (SJ Op. at 5). Unable to negotiate a solution, the Debtor and the Lenders, among others, agreed to forbear from exercising remedies until February 10, 2023. (*Id*.). On March 3, 2023, after the defaults remained uncured, GLAS, on behalf of the Lenders, accelerated the Term Loans and took control of 100% of the Debtor's common stock, becoming its sole shareholder. (*Id*.; A09350). The same day, GLAS removed Ravindran and appointed Timothy Pohl, an experienced restructuring professional, as the Debtor's sole director. (SJ Op. at 5). Pohl executed a written consent of the Board to immediately remove all existing officers and appoint himself as CEO and Secretary. (A09350).

Despite this change in control, on March 31, 2023, T&L caused the Debtor to transfer the entire Camshaft LP Interest to a non-guarantor affiliate, Inspilearn, for no consideration, pursuant to

---

2 Ravindran asserts that the First Transfer "was a protected, side-pocket investment secured by the OCI loan." (D.I. 45 at 1.)

a Transfer Agreement between the Debtor, Inspilearn, and Camshaft ("the Second Transfer"). (A08785; SJ Op. at 5). Through the Second Transfer, Inspilearn became a substitute limited partner in Camshaft Fund with an in-kind capital contribution equal to "100% of Byju's Alpha Inc.'s LP Interests in Camshaft Capital Fund, LP." (A08848-49; SJ Op. at 5-6). The transfer was made to non-operating entity, Inspilearn, under the control of T&L but beyond the Lenders' reach. (*Id.*).

As with the First Transfer, T&L, not Ravindran, made the actual "decision" to transfer the Debtor's interest. (SJ Op. at 5-6). Ravindran signed the Transfer Agreement on behalf of Inspilearn, and Byju Raveendran (the Debtor's founder and self-appointed CEO; T&L's founder, board member, and CEO; and Ravindran's older brother) executed the transfer on behalf of the Debtor, listing his title as "CEO." (A08790). On behalf of the Debtor, Raveendran represented and warranted that the Debtor had "all requisite power and authority to execute, deliver and perform this Agreement," despite the fact that Pohl had assumed the role of sole director and officer by that time. (A08786).

The Debtor received no consideration for the Camshaft LP Interest. (SJ Op. at 5). As of March 31, 2023, that interest was valued at over $540 million. (SJ Op. at 6). Yet, Inspilearn did not pay, or promise to pay, anything to the Debtor. (A07210). Indeed, Ravindran could not identify "$1 of value that Inspilearn promised it would pay [the Debtor] for the Camshaft investment." (A07211). As a result of the transfer, the Debtor had approximately $493,905.47 in its bank accounts (and nothing in its investment accounts). (SJ Op. at 6). According to Ravindran, the Debtor "didn't have anything left." (*Id.* n.32). On May 3, 2023, GLAS and Pohl filed suit in Delaware Court of Chancery, seeking among other things, a declaration that Pohl had been validly appointed as the Debtor's director and officer pursuant to Delaware General Corporate Law, 8 *Del. C.* § 225. *See GLAS Tr. Co. LLC v. Ravindran*, C.A. No. 2023-0488 (Del. Ch. 2023). That action ultimately affirmed the validity of Ravindran's removal and Pohl's appointment. (SJ Op. at 6).

Shortly after GLAS and Pohl filed the action, Byju Raveendran told the Lenders' senior financial advisor, regarding the Alpha Funds, that the Debtor "doesn't have the money," and that "the money is someplace the Lenders will never find it." (SJ Op. at 6-7). Ravindran later acknowledged that "Byju's moved the funds . . . to an entity that it controls in the United States . . . based on fear of lenders acting expeditiously" and "Byju's felt the need to protect the cash." (A08895-96).

### C. <u>Discovery as to the First Transfer to Camshaft Fund (July-August 2023)</u>

In May 2023, the Court of Chancery ordered Ravindran to "immediately" provide Pohl with "access to and exclusive control over the accounts[,] . . . documents, and information of the Company," as "necessary" for Pohl to "perform [his] role as sole director and officer." (SJ Op. at 7). Pohl learned that, across all the Debtor's known accounts, there was less than $3 million in cash as of March 3, 2023, when he became the Debtor's sole director. (A09353). By May 22, 2023, there was less than $550,000 in cash on hand. (*Id.*). From March 3 to May 22, 2023, the Debtor's former management made around 200 transfers out of the accounts, each without Pohl's knowledge or consent. (*Id.*). After examining the Debtor's bank accounts, Pohl determined that $533 million of the Term Loans' proceeds had been transferred to Camshaft Fund in April and July 2022. (SJ Op. at 7). Pohl disclosed this information to the Lenders, who previously had no knowledge of the transfers. (A09354). Thereafter, GLAS sued Camshaft in Florida state court, seeking to avoid the transfer of the Alpha Funds. (SJ Op. at 7). *See GLAS Tr. Co. LLC v. Camshaft Cap. Fund, LP*, Case No. 2023-022640-CA-01 (Fla. 11th Cir. Ct. 2023).

Upon learning of the transfers, GLAS investigated[3] Camshaft and its founder, William Morton. (A09354, A09083). The investigator discovered that: Camshaft's original offices were

---

[3] Camshaft takes issue with the fact that Plaintiffs hired a private investigator, as opposed to an independent third-party investigator, and challenges the investigator's observations, the significance of those observations, and any reliance by the Bankruptcy Court on those observations. (*See* D.I. 27 at 15-20; D.I. 37 at 7; SJ Op. at 3 n.11).

located at an IHOP (SJ Op. at 3 n.11); at some point, Camshaft purported to have moved its office to a WeWork-style space that private investigators visited on at least fourteen occasions without seeing evidence that it was used (*id.*, A09086-88); Camshaft does not have its own telephone number (A09089-90); and Camshaft Fund's only portfolio manager allegedly founded the fund in 2020 when he was 23 years old, without any formal training, and with a criminal record (SJ Op. at 3 n.11). The investigation further suggested that Camshaft Fund misled the public about its management by including false profiles on its website of individuals who did not work there and/or who performed limited work. (A09090-93). Camshaft Fund had few investors outside of the Debtor, whose $533 million constituted approximately 90% of its capital. (A01006, A09102-03, A09110, A09269-70, A09277).

Ravindran, the Debtor's then-officer and sole director, admitted to having conducted no diligence of Camshaft or Morton before causing the Debtor to sign away over half a billion dollars to them. (SJ Op. at 36 n.101). Ravindran admitted he "did not conduct any due diligence on [Camshaft Fund]," "never spoke with" Morton, and "simply took 'instruction[s] from T&L to 'sign[] documents,' without question," when T&L directed Ravindran to transfer the Alpha Funds to "the high-risk and unproven hedge fund."[4] (SJ Op. at 3 n.11). Moreover, despite sitting on T&L's board, Ravindran did not know what due diligence, if any, T&L's board had conducted into Camshaft or Morton. Ravindran had "no idea" how Camshaft was selected, and "no idea" why T&L "made that direction to [him] to invest the money in Camshaft." (A07175, A07198). Instead, Ravindran allowed T&L to make all decisions, with Ravindran simply taking "instructions" and "signing [] documents" without question. (A07175, A07197, A07204).

---

[4] Ravindran asserts that he was one of six board members and that he owed a fiduciary duty to T&L as the Debtor was not insolvent. (D.I. 45 at 1).

### D. <u>The Third Transfer to a Non-U.S. Trust of Inspilearn (February 2024)</u>

On February 1, 2024 ("the Petition Date"), the Debtor filed for bankruptcy. (SJ Op. at 7). As of the Petition Date, the outstanding principal amount of the Term Loans was approximately $1.2 billion. (*Id.*; A16093). After inquiring about the location of the Alpha Funds, the Bankruptcy Court ordered expedited discovery from Defendants, who disclosed that, even in the face of litigation from GLAS, they had consented to, and thereby facilitated,[5] the transfer of the Camshaft LP Interest to a "non-US trust" of Inspilearn on the Petition Date ("the Third Transfer"). (A08974, A09016). Camshaft knew the name of the "non-US trust" but refused to disclose it. (SJ Op. at 7).

On March 1, 2024, the Bankruptcy Court ordered Camshaft to produce all information requested by the Debtor. (A02412). Camshaft refused to comply, and Morton left the country the same day. The Bankruptcy Court issued a contempt order against Camshaft and Morton for their repeated discovery violations, which this Court affirmed. *See In re Byju's Alpha, Inc.*, 661 B.R. 109, 124 (Bankr. D. Del. 2024), *aff'd in part, appeal dismissed in part*, 2025 WL 947725 (D. Del. Mar. 28, 2025), *aff'd,* 2026 WL 1707580 (3d Cir. 2026).

### E. <u>The Fourth Transfer To A Non-U.S. Subsidiary of BYJU's (February 2024)</u>

On March 5, 2024, Ravindran resigned as the sole manager of Inspilearn. (SJ Op. at 7). Ravindran swore he had "no knowledge as to the whereabouts of the funds transferred from the Camshaft Capital Account." (A01971). In a press release by T&L, however, Ravindran said the funds had been transferred to a "non-US based 100% subsidiary of BYJU'[s]" ("the Fourth Transfer"). (SJ Op. at 7). Ravindran refused to identify the subsidiary but noted that BYJU's "entities remained (and continue to remain) the beneficial holders of these funds." (A01980).

---

[5] Camshaft's consent was required to make the transfer. (A09135).

In March 2024, the Bankruptcy Court entered a preliminary injunction against Defendants, along with Raveendran and his spouse Divya Gokulnath (another T&L director), from "taking any steps to spend, transfer, exchange, convert, dissipate, liquidate, or otherwise move or modify any rights" related to the Alpha Funds. (Adv. D.I. 84). On May 28, 2024, Ravindran was held in contempt for failing to comply with the preliminary injunction, which required him to "take all necessary steps to determine the location, amount, and composition of the Alpha Funds." (Adv. D.I. 204).

**F. The SJ Opinion And Judgment**

In July 2024, Plaintiffs moved for summary judgment on Counts I, IV, VIII, and X of the Second Amended Complaint, seeking recovery of more than half a billion dollars in fraudulently transferred loan proceeds. They included with the motion a proposed judgment that provided Camshaft Fund and Ravindran were each liable to Plaintiffs in the amount of $533 million, plus pre-judgment interest at 5.04% as of March 3, 2023, plus post-judgment interest and costs. (A07067-68). With respect to the Second Transfer, Plaintiffs sought $540,647,109.20, plus pre-judgment interest at 4.58% as of March 31, 2023, from Ravindran. (*Id.*). They also sought to hold Ravindran liable for breach of fiduciary duty and conversion. (*Id.*). Camshaft and Ravindran opposed summary judgment but did not raise any issues regarding damages in their briefing or at the October 9, 2024 hearing. (A09845-80, A10488-530, A12256-413).

On February 27, 2025, the Bankruptcy Court granted Plaintiffs' motion for summary judgment. As to damages, the Bankruptcy Court ordered the parties to submit a joint proposed order, or, "if unable to agree on the amount of judgment, to meet and confer regarding a briefing schedule and dates for an evidentiary hearing on the issue of damages." (SJ Op. at 43). Plaintiffs sent Defendants a proposed form of order and said that, if the parties could not agree, Plaintiffs intended to rely on their summary judgment briefing to support the damages amount and proposed that Defendants file any response by March 14, 2025. (A12530). Ravindran and Morton (on behalf of

Camshaft) responded by requesting until April 19 to file a response to the proposed judgment, to which they summarily said they did "not consent." (A12628-33).

Recognizing Defendants' familiar strategy of delay and given the ongoing risk that Defendants would take further steps to conceal or dissipate assets, Plaintiffs promptly filed the required statement and proposed judgment on March 7, 2025. (A12516-23). Plaintiffs explained that the issue of damages was "straightforward," that the factual and legal basis for their requested damages went "largely uncontested," and that judgment could be entered based on the summary judgment record. (A12518-19). Defendants remained silent until they noticed an appeal of the summary judgment decision on March 13, 2025. (A12651). As Plaintiffs requested, the Bankruptcy Court entered Plaintiffs' proposed form of judgment on March 14, 2025. (A12733-36).

Defendants then filed a motion for reconsideration or to alter or amend the Judgment, arguing the Judgment contains "clear errors of law and fact" by "incorrectly provid[ing] for duplicative damages," "appl[ying] the wrong rate for pre-judgment interest," and "incorrectly includ[ing] quarterly compounding interest." (A12751-66, A14445). The Bankruptcy Court denied the motion, concluding it "appropriately enter[ed] judgment against the applicable Defendants under each Count," and that Defendants' arguments about "double recovery" were premature. (A14445). The Bankruptcy Court also rejected Defendants' arguments concerning pre-judgment and compounding interest based on Delaware law and the court's exercise of discretion. (A14446-47). Finally, it held the Judgment was not "manifestly unjust" because the damages "derived directly from documents" prepared on Defendants' behalf, "Defendants have been afforded extensive opportunities . . . to contest the valuation which is based on the[ir] . . . own documentation," and Plaintiffs "would suffer undue prejudice caused by more briefing and further delay on this matter." (A14447-48).

Defendants timely appealed the Judgment and Amendment Denial Order. (A14450). Upon the parties' stipulation, this Court ordered the consolidation of that appeal with the earlier appeal of

the SJ Opinion. The consolidated appeals are fully briefed. (D.I. 26, 27, 33, 36, 37). On May 15, 2026, Defendants filed a motion with the Bankruptcy Court requesting certification of the March 14, 2025, judgment ("the March 2025 Judgment") pursuant to Fed. R. Civ. P. 54(b) ("the Certification Motion"). (Adv. D.I. 524). On June 4, 2026, the Bankruptcy Court granted the Certification Motion. (Adv. D.I. 526). On June 11, 2026, Ravindran filed a letter request (D.I. 41) seeking leave to file supplemental briefing, which this Court granted (D.I. 42). All briefing was complete on July 23, 2026. (D.I. 43, 44, 45). No party requested oral argument.

## II. <u>JURISDICTION AND STANDARD OF REVIEW</u>

The Court has jurisdiction to hear an appeal from a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). An order granting partial summary judgment is generally not considered a final order. *United States v. Nicolet, Inc.,* 857 F.2d 202, 206–07 (3d Cir. 1988) ("Orders that do not fully adjudicate a specific adversary proceeding or that require further factual development are governed by the ordinary finality precepts of routine civil litigation.")

Federal Rule of Civil Procedure 54(b), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 7054, "permits district courts to authorize immediate appeal of dispositive rulings on separate claims in a civil action raising multiple claims." *Gelboim v. Bank of Am. Corp.,* 574 U.S. 405, 409 (2015). Rule 54 of the Federal Rules states that: "When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). The Supreme Court described the purpose of Rule 54(b) as follows:

> Rule 54(b) relaxes "the former general practice that, in multiple claims actions, all the claims had to be finally decided before an appeal could be entertained from a final decision upon any of them." *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 434, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). The Federal Rules allow a plaintiff to "state [in one complaint]

> as many separate claims . . . as it has." Rule 8(d)(3). Rule 54(b) was adopted in view of the breadth of the "civil action" the Rules allow, specifically "to avoid the possible injustice" of "delay[ing] judgment o[n] a distinctly separate claim [pending] adjudication of the entire case." Report of Advisory Committee on Proposed Amendments to Rules of Civil Procedure 70 (1946) (explaining that Rule 54(b) was recast in 1946 to avoid confusion and misapplication); *see Dickinson v. Petroleum Conversion Corp*., 338 U.S. 507, 511, 70 S.Ct. 322, 94 L.Ed. 299 (1950) (Rule 54(b) responded to liberalized joinder of claims and parties under the Federal Rules, which "increased the danger of hardship and denial of justice through delay if each issue must await the determination of all issues as to all parties before a final judgment can be had"). The Rule thus aimed to augment, not diminish, appeal opportunity.

*Gelboim*, 574 U.S. at 409-410 (alterations in original); *see also id*. at 415 (noting that "Rule 54(b) is designed to permit acceleration of appeals in multiple-claim cases").

Courts may enter a judgment under Rule 54(b) if the judgment satisfies two conditions: "(1) it must have the requisite degree of finality to be considered a 'final judgment' . . . in the sense that it is an ultimate disposition of an individual claim entered in the course of [a] multiple claim action, and (2) it must be ready for appeal . . . taking into account judicial administrative interests as well as the equities involved." *Manasco v. Rogers*, 2007 WL 9789681, at *2 (D.N.J. Feb. 28, 2007) (internal quotations omitted) (quoting *Sussex Drug Prods. v. Kanasco, Ltd*., 920 F.2d 1150, 1153 (3d Cir. 1990)). The second prong reflects the "no just reason for delay" requirement in Rule 54(b). *See id.*

An order will be considered final for Rule 54(b) purposes when it "end[s] the litigation on the merits" as to a specific claim in a multi-claim action. *Gerardi v. Pelullo*, 16 F.3d 1363, 1369 (3d Cir. 1994) (citation omitted). Stated differently, an order will satisfy the first prong if "there is nothing left to do on the [subject] claims besides execute the judgment." *Aleynikov v. Goldman Sachs Group, Inc*., 2021 WL 1399858, at *2 (D.N.J. Apr. 14, 2021). The requisite finality exists here because there is nothing left for the Bankruptcy Court to adjudicate regarding the claims decided in the Judgment. Indeed, Plaintiffs have taken multiple steps to execute the Judgment entered on the claims (with court

approval). The Bankruptcy Court has so certified the Judgment, "having expressly determined that there is no just reason for delay of an appeal from said judgment." (Adv. D.I. 526). Accordingly, the Court may hear the appeal of the Judgment and related orders.

Defendants raise three main issues on appeal. The first issue is whether the Bankruptcy Court correctly granted summary judgment against Ravindran and Camshaft for actual fraudulent transfer, breach of fiduciary duty, declaratory judgment, and conversion, based on the undisputed facts in the record that conclusively established Plaintiffs' entitlement to relief. This Court reviews *de novo* the Bankruptcy Court's summary judgment rulings. *See In re Start Man Furniture, LLC*, 647 B.R. 116, 126 (D. Del. 2022).

The second issue is whether the Bankruptcy Court properly exercised its discretion in concluding summary judgment was not premature under Federal Rule of Civil Procedure 56(d). This Court reviews for abuse of discretion the Bankruptcy Court's determination of "whether a summary judgment motion [i]s ripe for resolution." *Start Man Furniture*, 647 B.R. at 126.

The third issue is whether Ravindran forfeited his challenge—raised for the first time on appeal seven months after the summary judgment decision—to Judge Dorsey's authority to sign the SJ Opinion, and if not, whether the reassignment of the adversary proceeding to another judge two days prior to its entry requires reversal of the SJ Opinion and related Orders. This Court reviews *de novo* a preserved challenge to judicial authority. *See In re Prosser*, 2024 WL 1230148, *3 (3d Cir. Mar. 22, 2024) (citing *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 251 (2018)).

The fourth issue is whether the Bankruptcy Court properly exercised its discretion in entering the Judgment without a hearing on damages, and whether it properly awarded damages, including prejudgment interest, against Defendants. This Court reviews for abuse of discretion an order denying a motion to alter or amend an order or judgment. *See In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir. 2018); *Petrossian v. Collins*, 523 F. App'x 861, 864 (3d Cir. 2013). This Court

reviews *de novo* the Bankruptcy Court's legal conclusions with respect to damages. *See In re Lansaw*, 853 F.3d 657, 663-64 (3d Cir. 2017).

## III. ANALYSIS

### A. The Bankruptcy Court Correctly Granted Plaintiffs' Summary Judgment Motion

The Bankruptcy Court's SJ Opinion rests on undisputed facts, well established precedent, and multiple claims that independently support the Judgment against Defendants for over $533 million. Defendants identify no error warranting reversal.

#### 1. Defendants Were Entitled to Summary Judgment Against Camshaft on Count I for Actual Fraudulent Transfer

Upon avoidance of the First Transfer, the Debtor was entitled to recover from Camshaft Fund as an initial transferee. *See* 11 U.S.C. § 550(a)(1). Camshaft failed to raise a genuine issue of fact as to either its "mere conduit" or "good faith" defense. Plaintiffs met their burden to establish fraudulent intent through numerous badges of fraud that Camshaft failed to rebut.

##### a. Camshaft Failed to Raise Any Triable Issues as to its "Mere Conduit" Defense

Section 550(a) of the Bankruptcy Code authorizes a trustee or debtor in possession to recover property from, among others, "the initial transferee" of an avoided transfer. 11 U.S.C. § 550(a)(1). A "defense to avoidance" is available to those entities that are "mere conduits" of the avoided transfers. *In re Lenox Healthcare, Inc.*, 343 B.R. 96, 103 (Bankr. D. Del. 2006) (citing cases). To be a "mere conduit," the defendant "must establish that it lacked dominion and control over the transfer because the payment simply passed through its hands and it had no power to redirect the funds to its own use." *Id.* (quotations omitted).

The Bankruptcy Court concluded that Camshaft Fund qualifies as the initial transferee of the Alpha Funds. (SJ Op. at 22-23). There appears no dispute that Camshaft Fund received the Alpha Funds from the Debtor. (*Id.*). Camshaft chose to disburse the Alpha Funds to OCI, demonstrating

its "dominion and control" over them. (*Id.* at 4). *See In re BYJU's Alpha,* 661 B.R. 109, 124 (Bankr. D. Del. Apr. 3, 2024). Camshaft acknowledges that it—not the Debtor—had "the authority to make decisions with respect to the investment of the Alpha Funds." (D.I. 27 at 40; A09136). Although Camshaft contends that the Credit Agreement prohibited anyone other than the Debtor from exercising control over the funds, Camshaft was not a party to that agreement and did, in fact, exercise control over the Alpha Funds after receiving them from the Debtor. (D.I. 27 at 43; SJ Op. at 23).

Camshaft compares itself to a "bank" through which an "accountholder" merely "deposits money into his bank account." (D.I. 27 at 40-45). But Camshaft did not "merely receive[] funds" from the Debtor "as a deposit into an account" Camshaft does not control. Camshaft is not regulated, licensed, or chartered as a bank, and does not hold itself out as such. Nor did Camshaft maintain deposit accounts for its few clients, including the Debtor. Unlike a bank, the Debtor could *not* withdraw its money in Camshaft on demand; to the contrary, the Debtor "agree[d] not to make any withdrawal during the first 36 months of [its] subscription." (A08221, A08242).

The cases Camshaft cites for its bank analogy confirm the Debtor was not a mere accountholder that made a routine deposit into Camshaft Fund while retaining "unfettered access to the full amount" of the Alpha Funds. *See Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1302-03 (11th Cir. 2020) (accountholder "never relinquishes his interest in or control over the funds deposited into his bank account") (cleaned up); *In re Custom Contractors, LLC*, 745 F.3d 1342, 1350 (11th Cir. 2014) ("[W]hen a bank receives funds in the form of a deposit, the attendant obligations owed to the transferor—namely to return the funds upon request—are sufficiently important [that it will not be] liable as an initial transferee."). Here, the Debtor fully relinquished control over the Alpha Funds for years, with no expectation of repayment. (A09358, A08054-57). The Bankruptcy Court correctly determined Camshaft failed to raise a genuine issue of fact as to its "mere conduit" defense.

**b. Camshaft Failed To Raise Any Triable Issues As To Its "Good Faith" Defense**

Under section 548(c), a party that receives a fraudulent conveyance "that takes for value and in good faith has a lien on . . . any interest transferred . . . to the extent that such transferee . . . gave value to the debtor in exchange for such transfer or obligation." 11 U.S.C. § 548(c). In determining whether a transferee took in good faith, courts consider whether "the transferee had actual knowledge of the debtor's fraudulent purpose in making the transfers" or, at a minimum, "had knowledge of facts or circumstances that would have induced an ordinarily prudent person to make an inquiry," which, "if made with reasonable diligence, would have led to the discovery of the debtor's fraudulent purpose." *In re Maxus Energy Corp.*, 641 B.R. 467, 510-11 (Bankr. D. Del. 2022). A transferee may not "put on 'blinders'" where "circumstances would place the transferee on inquiry notice of the debtor's fraudulent purpose or insolvency." *Id.*; *accord In re Bayou Grp., LLC*, 439 B.R. 284, 311-13 (S.D.N.Y. 2010) (citing cases). The defendant-transferee bears the burden on its section 548(c) defense. *See Zazzali v. AFA Fin. Grp., LLC*, 2012 WL 4903593, *1 (Bankr. D. Del. Aug. 28, 2012).

The Bankruptcy Court concluded that the undisputed evidence—including the deposition testimony of Camshaft's founder and CEO—established "numerous red flags that should have led Camshaft to discover the Debtor's fraudulent purpose." (SJ Op. at 24). Those "red flags" include (but are not limited to) the undisputed facts that (1) the $533 million transaction "was exponentially larger than that which a fund as small and new as Camshaft would typically handle"; (2) Camshaft had "virtually no downside exposure," according to Morton's testimony; (3) Camshaft received "excessive" up-front fees of over $10 million, despite claiming to have been nothing but a "mere conduit"; and (4) "the terms of the deal did not line up with its economic substance." (*Id.*). Specifically, the Debtor recorded a $533 million "appreciating asset" on its books "without a liability" (A09854), and OCI's failure to repay the promissory notes was a risk to be borne solely by the Debtor.

(A08042-57). This Court finds no clear error in the finding that these "red flags" put Camshaft on inquiry notice of the transaction's fraudulent purpose. *See In re Hill*, 342 B.R. 183, 203 (Bankr. D.N.J. 2006) (grossly uneven distribution of assets was enough to put defendant on notice that debtor was intending to divest herself of assets). Had Camshaft conducted any reasonable diligence, it would have determined that the Debtor had defaulted, was insolvent, and was attempting to fraudulently transfer borrowed funds. Camshaft did not come close to meeting its burden on good faith.

On appeal, the only evidence Camshaft cites is (1) a Reuters article outside the record purportedly suggesting the BYJU's group "had a valuation of approximately $22 billion in 2022"; (2) a representation in the subscription agreement for the April 2022 transfer—which Camshaft helped orchestrate—that it did not violate "any laws, investment guideline[s] or applicable restrictions" (A09895); and (3) an unsupported reference to "pretransfer due diligence" Camshaft performed and "legal advice" it obtained. (D.I. 27 at 47-48). Although it may be true that the "good faith" defense sometimes involves disputed factual issues, Camshaft cites no evidence to support the existence of any genuine dispute here. (*Id.* at 48).

**c. <u>The Undisputed Facts Established Fraudulent Intent</u>**

To prevail on a claim of actual fraudulent transfer, Plaintiffs had to "prove that the debtor made the[] transfers with actual intent to hinder, delay, or defraud its creditors." *Drivetrain, LLC v. DDE Partners, LLC*, 2023 WL 6938144, *7 (Bankr. D. Del. Oct. 19, 2023). "[A]ny one of the three requisite states of mind" is sufficient to establish intent, *id.*, and a plaintiff may prove it through "badges of fraud, *i.e.*, circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent," *Kirschner v. Large S'holders (In re Tribune Co. Fraudulent Conveyance Litig.)*, 10 F.4th 147, 160 (2d Cir. 2021).

Typical "badges of fraud" include (1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtor; (4) how much of

the debtor's estate was transferred; (5) the debtor's reservation of benefits, control, or dominion over the property transferred; and (6) secrecy or concealment of the transaction. *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P.*, 405 B.R. 527, 545 (Bankr. D. Del. 2009); *see* 6 *Del. C.* § 1304(b) (codifying the "badges of fraud"). Although the existence of a single badge of fraud "may cast suspicion on the transferor's intent," *Fedders*, 405 B.R. at 545, "a confluence of several badges of fraud in one transaction [ ] generally provides conclusive evidence of an actual intent to defraud." *Merrill Lynch Bus. Fin. Srvs., Inc. v. Kupperman*, 441 F. App'x 938, 941 (3d Cir. 2011) (citations omitted).

The undisputed facts demonstrate at least five badges of fraud with respect to the First Transfer, establishing the requisite intent to hinder, delay, or defraud the Lenders: (1) the transfer itself was concealed for nearly sixteen months; (2) the Debtor transferred "substantially all" (more than 80%) of its assets to Camshaft Fund; (3) the Debtor's former management actively concealed the location of the Alpha Funds, "including by disregarding [the Bankruptcy] Court's discovery orders, even in the face of contempt sanctions and a warrant for civil confinement"; (4) the Debtor was insolvent post-transfer "with no ability to generate revenue"; and (5) the Debtor made the transfer shortly after incurring substantial debt, within six months of entering into the Credit Agreement, on the heels of two defaults and one limited waiver arrangement. (SJ Op. at 27).

In response to these "badges of fraud," Camshaft offered primarily "argument" and "theories"—not record evidence capable of creating a genuine issue of fact. (*Id.* at 28). The only evidence Camshaft cited in opposing summary judgment on Count I was the language of the Credit Agreement and the testimony of Camshaft's CEO, Morton, who purported to offer "several legitimate corporate purposes" for the First Transfer but did not rebut or dispute any of the badges of fraud. (SJ Op. at 29). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added).

On appeal, Camshaft offers additional theories as to why the badges of fraud purportedly did not establish intent, but it does not cite any portion of the record to support them. Camshaft takes issue with the "concealment" badge because the Debtor purportedly had no contractual "obligation" to inform the Lenders about its use of the loan proceeds. (D.I. 27 at 49-50). That does not change the undisputed facts that the Lenders did not know about the transfer and were actively misled to believe the Alpha Funds remained in the Debtor's bank accounts. (SJ Op. at 4). Camshaft admits the Debtor transferred "substantially all" of its assets but nevertheless asserts, without support, that "[t]his factor does not suggest fraud." (*Id.* at 50). Camshaft maintains that the remaining badges presented factual disputes but does not identify any disputed facts or supporting evidence. Camshaft offers no basis to disturb the Bankruptcy Court's well-founded conclusion that Plaintiffs established intent.

In sum, the Bankruptcy Court correctly entered summary judgment against Camshaft on Count I for actual fraudulent transfer, rejecting Camshaft's unsupported "mere conduit" and "good faith" defenses and correctly determining the evidentiary record established fraudulent intent based on at least five "badges of fraud"—none of which Camshaft offers evidence to refute.

#### d. Judgment Was Properly Entered Against Camshaft Advisors and Camshaft Management

Camshaft also asserts that the Judgment against Camshaft Capital Advisors, LLC ("Camshaft Advisors"), and Camshaft Capital Management LLC ("Camshaft Management") should be vacated because they supposedly did not receive the transfers. (D.I. 27 at 52). Camshaft raised this argument only in a motion to dismiss (A05130-31) and did not renew it at summary judgment. *See Botman Int'l B.V. v. Int'l Produce Imports, Inc.*, 205 F. App'x 937, 941 (3d Cir. 2006) (party that argued issue in seeking dismissal but "failed to follow up on this position at summary judgment" was "precluded

from raising th[e] argument on appeal"). Moreover, Camshaft does not cite any authority for its contention. In any event, Camshaft's conclusory assertion provides no basis to reverse. The governing documents confirmed that the Camshaft LP Interest could not be "assigned, pledged or otherwise transferred without prior written consent of [Camshaft Advisors]," which was Camshaft Fund's sole investment manager and was "solely responsible for managing the Camshaft Fund" and its assets. (A03277, A03640, A03265-66). Camshaft Management was Camshaft Fund's sole general partner. (A03265-66). All the Camshaft entities were created by and were under the complete control of their founder, Morton, and were involved with the transactions. (A07090, A09086; SJ Op. at 2). This Court agrees that Camshaft failed to raise a genuine issue of fact excusing the Camshaft entities from liability.

### 2. <u>Plaintiffs Were Entitled to Summary Judgment Against Ravindran on Count IV for Breach of Fiduciary Duty</u>

To establish a claim for breach of fiduciary duty under Delaware law, a plaintiff must prove that a fiduciary duty exists and that the fiduciary breached that duty. *See York Linings v. Roach*, 1999 WL 608850, *2 (Del. Ch. July 28, 1999). Directors and officers owe fiduciary duties of care and loyalty. *See In re Pattern Energy Grp. Inc. S'holders Litig.*, 2021 WL 1812674, *46 (Del. Ch. May 6, 2021). The duty of care requires directors and officers to "use that amount of care which ordinarily careful and prudent men would use in similar circumstances," considering "all material information reasonably available in making business decisions." *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005), *aff'd* 906 A.2d 27 (Del. 2006). The duty of loyalty requires a fiduciary to act with "undivided and unselfish loyalty to the corporation." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) (quotations omitted). A fiduciary breaches the duty of loyalty where he "knowingly and completely fail[s] to undertake [his] responsibilities." *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243-44 (Del. 2009). As the Bankruptcy Court found, and Rivandran has never

contested, Rivandran was the Debtor's sole director and an officer from September 2021. (SJ Op.at 35-36). As such, he owed the Debtor fiduciary duties of care and loyalty, the latter of which incorporates the duty to act in good faith. *Pattern Energy*, 2021 WL 1812674 at *46. (SJ Op. at 36).

Count IV alleges that Ravindran breached fiduciary duties he owed the Debtor as its officer and sole director by authorizing the First Transfer without asking any questions or conducting any diligence of Camshaft or Morton. (SJ Op. at 36). It alleges Ravindran breached his fiduciary duties with respect to the Second Transfer by facilitating the transfer of the Camshaft LP Interest—then valued at $540 million—to Inspilearn, solely because T&L directed it. (*Id.*). At summary judgment, Ravindran did not oppose the merits of the fiduciary breach claim. (*Id.*). He argued only that the claim was "technically improper" because (1) the Debtor was not insolvent at the time of the First Transfer, so he did not owe it any duties, and (2) the Debtor's certificate of incorporation exculpates him from personal liability. (SJ Op. at 36-38). On appeal, Ravindran asserts that the Bankruptcy Court erred in rejecting both arguments, that its analysis of the threshold issue of insolvency was flawed, and that Ravindran did not breach any duty.

#### a. The Debtor's Insolvency at the Time of the Transfers Is Supported by Undisputed Facts in the Record

This Court sees no error in the Bankruptcy Court's ruling that there was no genuine dispute with respect to the Debtor's insolvency at the time of the transfers.[6] Ravindran's only evidence, a March 2023 valuation, came nearly a year *after* the mid-2022 transfers and "does nothing to establish the value of the Camshaft LP Interest at the time of the First Transfer." (SJ Op. at 37). Even accepting

---

6 At summary judgment, Ravindran argued that, unless Debtor established that it was insolvent at the time of the transfers—an issue of fact Ravindran asserted was in dispute—he owed fiduciary duties only to the Debtor's parent company. *Scher v. Essar Glob. Fund Ltd. (In re Essar Steel Minn. LLC & Esml Holdings, Inc.)*, 602 B.R. 600, 607-08 (Bankr. D. Del. 2019) ("In general, directors of a wholly-owned subsidiary owe fiduciary duties only to the parent corporation. As the company enters the zone of insolvency, however, those directors also owe fiduciary duties to creditors of the subsidiary.") (internal quotations omitted).

that valuation, undisputed evidence shows the Debtor remained insolvent: $1.2 billion debt against $671 million assets (at the time of the First Transfer) and $540.5 million assets (at the time of the Second Transfer). (*Id.*). As set forth below, both satisfy the Bankruptcy Code's insolvency definition.

Ravindran challenges the insolvency ruling on the basis that it was premature. (D.I. 26 at 30). Courts routinely resolve insolvency at summary judgment—including in fraudulent transfer cases—even where the insolvency calculation is contested, so long as (like here) there is no genuine dispute of material fact as to the calculation. *See, e.g.*, *Caruso v. Hofmeister*, No. 12-13262 (BLS), Adv. Pro. Nos. 14-50977 (BLS), Adv. D.I. 97 at 5-6 (Bankr. D. Del. Nov. 15, 2017)) (summary judgment ruling that debtor in fraudulent transfer action was insolvent, over defendant's objections); *In re Designline Constr. Servs., Inc.,* 2012 WL 4866699, *2 (Bankr. D.N.J. Oct. 12, 2012) (summary judgment ruling of insolvency where "Defendants did not retain their own insolvency expert or submit the affidavit of a qualified professional"). For example, the parties in *Miller v. ANConnect LLC,* 2024 WL 606517 (Bankr. D. Del. Feb. 13, 2024), cited by Ravindran, identified genuine issues of material fact by filing "hundreds of pages of evidence," *id.* at *1—something Ravindran did not do here.

The Bankruptcy Court correctly analyzed only the Debtor's assets, without considering the entire BYJU's group. (*See* D.I. 26 at 30-31). Under the Bankruptcy Code, insolvency exists when "the sum of [the debtor's] debts is greater than all of [the debtor's] property, at a fair valuation." 11 U.S.C. § 101(32)(A). Ravindran cites no authority for his theory that subsidiary insolvency should be measured by parent company assets. "[T]he financial condition of [the parent] is irrelevant [to subsidiary solvency analysis] because it is a separate legal entity from [the subsidiary d]ebtor." *In re AIG Fin. Prods. Corp.*, 651 B.R. 463, 471 (Bankr. D. Del. 2023), *aff'd* 2024 WL 3697465 (D. Del. Aug. 28, 2024); *In re Total Tech. Servs., Inc.*, 150 B.R. 893, 899 (Bankr. D. Del. 1993) (rejecting consolidated parent subsidiary insolvency analysis). In his reply, Rivandran explains that his challenge is based on the SJ Opinion's failure to examine the assets of T&L and other companies

which were identified as guarantors of the Term Loan, citing *Mellon Bank, N.A. v. Metro Commnc's, Inc.*, 945 F.2d 635, 648-49 (3d Cir. 1991) for the proposition that a solvency determination must take into account such guarantees. (D.I. 36 at 9-10). Ravindran does not explain why this argument was not raised at summary judgment or why no evidence of such value was offered. (Adv. D.I. 341, 377).

#### b. **<u>The Undisputed Facts Established Ravindran's Breach of Fiduciary Duty</u>**

"Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge their fiduciary obligations in good faith.". *Official Comm. of Unsecured Creditors of Midway Games Inc. v. Nat'l Amusements Inc. (In re Midway Games Inc.)*, 428 B.R. 303, 318 (Bankr. D. Del. 2010) "The intentional dereliction of duty or the conscious disregard for one's responsibilities" is a "non-exculpable, non-indemnifiable violation of the fiduciary duty to act in good faith"). *See McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008).

"Having considered the evidence in the record regarding Ravindran's total abdication of his duties to the Debtor, as well as the absence of any evidence to the contrary," the Bankruptcy Court explained, "I find that Debtor has established as a matter of law that Ravindran breached his duty of good faith." (SJ Op. at 38-39).

On appeal, Ravindran argues that that he did not breach his fiduciary duties because he acted within the Debtor's "corporate purpose." This Court agrees with Plaintiffs that this argument fails for three reasons. First, the Contempt Order, which is now final, precludes Ravindran from "asserting . . . that the Alpha Funds . . . were transferred . . . for a proper purpose." (D.I. 26 at 32-33; A05144-46). Second, the Bankruptcy Court correctly determined that the transfers were motivated by a fraudulent purpose, citing "numerous red flags" that undermine any contention the transfer was proper. (SJ Op. at 23-24, 28). Third, Ravindran's contention that the transfers were consistent with

the corporate purpose of acting as "a vehicle for disbursing the [Alpha Funds] among the entities within the BYJU's group" ignores that Camshaft is not a BYJU's entity. (D.I. 26 at 33; SJ Op. at 3 n.11). Ravindran offers no evidence of what legitimate purpose these transfers could have possibly achieved. As the Debtor's sole director and officer, he was uniquely positioned to document their business purpose and chose not to. The Second Transfer removes any doubt: the Debtor transferred the Camshaft LP Interest to Inspilearn for no consideration whatsoever. (SJ Op. at 40). Exchanging a $540 million asset for nothing cannot serve any legitimate business purpose—it can only defraud creditors.

### c. <u>**The Exculpation Provision Does Not Bar This Claim**</u>

Ravindran asserts that the exculpation provision in the Debtor's Certificate of Incorporation bars the breach of fiduciary duty claim against him. (D.I. 26 at 35-37). That provision states: "The personal liability of the directors to this corporation or its stockholders for monetary damages for any breach of a fiduciary duty as a director shall be eliminated to the fullest extent permitted under applicable law." (A07153). Delaware law authorizes corporations to eliminate the "personal liability of a director or officer to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officers." 8 *Del. C.* § 102(b)(7). But such provisions "shall not eliminate" liability for, among other things, (i) "any breach of the director's or officer's duty of loyalty" or (ii) "acts or omissions not in good faith or which involve intentional misconduct." *Id.*; *see New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 549 (Del. Ch. 2023) (same).

Where, as here, a director "consciously ignores his or her duties to the corporation, . . . the director's actions are either 'not in good faith' or involve 'intentional misconduct.'" *Litig. Tr. of MDIP, Inc. v. Rapoport*, 2004 WL 3101575, *4 (D. Del. Nov. 29, 2004) (cleaned-up); *see McPadden*, 964 A.2d at 1274 (fiduciary's conscious disregard for his responsibilities "must be treated as a non-exculpable, non-indemnifiable violation of the fiduciary duty to act in good faith"). The

uncontroverted evidence demonstrated "Ravindran's total abdication of his duties to the Debtor," violating his duty of good faith. (SJ Op. at 38-39). Moreover, the Debtor's Certificate of Incorporation does not insulate officers from personal liability to the corporation for monetary damages for any breach of fiduciary duty. (A07152 (concerning only breach of fiduciary duty "as a director")). In addition to serving as a director of the Debtor, Ravindran served as an officer from September 2021 until March 3, 2023. (SJ Op. at 2). The exculpation clause thus has no application to Ravindran's acts or omissions taken as an officer. (*Id.* at 38-39).

**3. Plaintiffs Were Entitled To Summary Judgment Against Defendants On Count VIII For Declaratory Judgment**

Count VIII sought a declaratory judgment that the Second Transfer—and all subsequent transfers or dispositions of the Alpha Funds—were *ultra vires*, void *ab initio*, and otherwise without force and effect, and that the Alpha Funds are property of the estate. (SJ Op. at 39). In support of that claim, Plaintiffs presented evidence demonstrating that the Second Transfer was effected by unauthorized individuals for no consideration. (SJ Op. at 40). Defendants failed to identify a genuine dispute of fact on those issues below, and they likewise fail to identify any error in the Bankruptcy Court's grant of summary judgment on this claim. (SJ Op. at 41).

**a. Ravindran's Challenges to the Declaratory Judgment Fail**

The declaratory judgment claim, based on 28 U.S.C. §§ 2201 and 2202, asserts that the Second Transfer of the Camshaft LP Interest in late March 2023 was void *ab initio* because it was carried out by unauthorized individuals (and the Debtor received nothing in exchange). The Bankruptcy Court agreed, finding that Ravindran lacked authority because he had been removed from his positions at the Debtor in early March 2023 and Byju Raveendran was not employed by the Debtor in any capacity. (*See* SJ Op. at 39-41). The only argument Ravindran raised in opposition to summary judgment on Count VIII was that "the Court should defer issuing a ruling until all appeals in this and

related actions have been resolved." (SJ Op. at 40; A10842-43). Ravindran argues for the first time on appeal that (1) the Second Transfer was not void *ab initio* because Ravindran had "full authority to act," and (2) there is no cognizable declaratory judgment claim against Ravindran because he did not assert a claim to the Camshaft LP Interest. (D.I. 26 at 37; D.I. 36 at 15-17).

The Bankruptcy Court never had an opportunity to consider Ravindran's argument regarding his authority to cause the Second Transfer.[7] Assuming that the Court should consider the argument, it is wrong. Although Ravindran was removed as officer and director as of March 3, 2023, he is nevertheless liable for his role in causing the Second Transfer, a "process" which began as early as October 2022.[8] (A07093-98). *See Linkerhof v. Del. Soc. for Prevention of Cruelty to Animals*, 2012 WL 769603, *4 (D. Del. Mar. 9, 2012) (acts taken by board fraudulently and/or in bad faith are void).

Ravindran argues there is no "adverse legal interest" because he never asserted personal ownership of the Alpha Funds. (*See* D.I. 26 at 39). The "adverse legal interest" requirement is a component of the ripeness test for declaratory judgment actions and ensured such actions are not based upon "uncertain and contingent events." *Nichols v. Markell*, 2014 WL 1509780, *23 (D. Del. Apr. 17, 2014). Here, however, the harm has already occurred, placing the legal interests of Ravindran and the Debtor directly at odds. *Lewis v. Alexander*, 685 F.3d 325, 341 (3d Cir. 2012)

---

7 According to Ravindran, his argument that "the Bankruptcy Court should defer a ruling on the declaratory judgment claim until Ravindran's appeals and related actions had been resolved" was sufficient to preserve his argument that he lacked authority to cause the Second Transfer because "[t]hose appeals and related actions . . . involved the issue of whether Timothy Pohl had taken over the authority to act from Ravindran." (D.I. 36 at 16 (citing A11051-52; A11057-58).

8 *See* Finestone Decl. Ex. 20 (A08732) (Camshaft Second Am. Interrog. Answers) at 4-5; *see also* Adv. D.I. 124 (A03064-142) (Ravindran Answer to Amended Complaint) ¶ 6 (admitting that, "in October 2022, the Debtor started the process of transferring its limited partnership interest in Camshaft Fund to Inspilearn"). Documents produced by Camshaft show it beginning to discuss the transfer in the fall of 2022. (*See* Finestone Decl. Ex. 21 (A08740-46)).

(adversity standard requires only "a substantial controversy, between parties having adverse legal interests").

Ravindran argues he cannot be liable for Count VIII because he participated in the transfers "solely as the corporate representative of Inspilearn." (D.I. 26 at 39). This Court agrees that this is no defense, and Ravindran cites no authority in support. In sum, Ravindran failed to raise a triable issue as to his authority to transfer the Debtor's property after his removal as director on March 3, 2023. (SJ Op. 40-41). When corporate officers exceed their authority, they face personal liability. *See Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 60 (Del. Ch. 2015) ("[A] corporate officer can be held personally liable for the torts he commits").

**b. <u>Camshaft's Additional Arguments Are Unavailing</u>**

Camshaft argues that it is not properly subject to Count VIII because it "lack[s] any claim to the Alpha Funds or the limited partnership interest that was transferred in the Second Transfer" and has no interest in the outcome. (D.I. 27 at 53). Camshaft offers no support for that argument, other than a reference to Camshaft's "earlier briefing" and an unsupported assertion (*id.*) that "th[e] transfer of economic rights did not permit Camshaft to continue . . . asserting those rights." That kind of "passing" assertion, without "argument []or legal support," is not adequately developed for this Court's review. *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 821 n.10 (3d Cir. 2006). In any event, Camshaft's "earlier briefing," asserted that the basis of the Debtor's claim in Count VIII is that Inspilearn and Riju Ravindran acted without proper authority, not that Camshaft acted without proper authority. Thus, Camshaft, it contends, has no interest in the outcome. Further, Camshaft argues that because it has not asserted any rights or interest in the Alpha Funds, as against the Camshaft Defendants, there is no actual controversy or need to adjudicate adverse legal interests.

As the Bankruptcy Court properly held, "Camshaft clearly has a legal interest in the matters at issue in Count VIII," even if "it chooses not to take action with respect to that interest at this time."

(MTD Order at 33). The Second Transfer is the Debtor's transfer of the *Camshaft LP Interests*. (A03276-77). According to Camshaft Management's agreement memorializing the transfer, Ravindran used "100% of Byju's Alpha Inc.'s LP interests in Camshaft Capital Fund, LP" as Inspilearn's contribution to subscribe to the interest in Camshaft Fund, which was then accepted by Camshaft Management. (A03277, A03640). Camshaft approved and effectuated the transaction pursuant to which the Camshaft LP Interest were transferred, creating sufficient "adversity" between the parties.

This Court agrees that the Bankruptcy Court correctly entered summary judgment on Count VIII for declaratory judgment that the Second Transfer and all subsequent transfers or dispositions of the Alpha Funds were *ultra vires* and void. Ravindran lacked authority to effect the Second Transfer as he had already been removed as a director, and Defendants may not defeat this claim based on their purported lack of "adverse interest." Defendants approved and effectuated the transfer, and their legal interests are at odds with the Debtor's based on actual, not contingent, events.

#### 4. Plaintiffs Were Entitled To Summary Judgment Against Ravindran On Count X For Conversion

Count X asserted a claim for conversion against Ravindran (and T&L) based on the Debtor's transfer of the Camshaft LP Interest without corporate authority. (SJ Op. at 41). Conversion is an "act of dominion wrongfully asserted over the property of another, in denial of his right, or inconsistent with it." *Malca v. Rappi, Inc.*, 2021 WL 2044268, *5 (Del. Ch. May 20, 2021) (quotations omitted). To prevail on the claim, a plaintiff must prove it had an interest in and the right to possess the property, and that the defendants wrongfully possessed "or disposed of the property as if it were their own." (SJ Op. at 42 (citing *Malca*)). The record establishes that Ravindran lacked the

corporate authority to enter the Second Transfer, which wrongfully disposed of the Camshaft LP Interest.[9]

Ravindran argues for the first time on appeal that he cannot be liable for conversion because he did not personally possess the Camshaft LP Interest. (D.I. 26 at 40). Ravindran does not appear to have raised this argument at summary judgment. Although Ravindran asserts that he adequately preserved this issue by arguing that "he lacked *intent*," Ravindran does not suggest that he ever raised the argument he now presses on appeal. (D.I. 26 at 41 n.13; *see* SJ Op. at 42 (noting that the only argument Defendants raised in opposition to summary judgment on Count X was that "the Motion is premature")). Regardless, the argument is unavailing. As the Bankruptcy Court explained, Ravindran "lacked corporate authority to exercise control over the Debtor's property," meaning the "transfer of the [Camshaft] LP Interest was a wrongful disposition of the Debtor's property," which "constitutes conversion." (SJ Op. at 42 (citing *Gulf Aviation Servs. Grp. WLL v. Wilmington Tr. Co.*, 2023 WL 9118772, *7 (Del. Super. Dec. 29, 2023) ("Property is converted when the defendant wrongfully exerts dominion or control over it in a manner than denies or is inconsistent with the plaintiff's right.")). Contrary to Ravindran's suggestion, he need not have taken possession of an asset to be liable for wrongfully transferring it. (D.I. 26 at 40).[10]

### A. The Bankruptcy Court Did Not Abuse its Discretion in Entering the SJ Opinion Which Was Not Premature Under Rule 56(d)

Defendants argue that the Bankruptcy Court erred as a matter of law in entering the SJ Opinion prematurely. (*See* D.I. 26 at 22-26; D.I. 27 at 31-36). All Defendants opposed the SJ Motion on the

---

9 Ravindran makes much of the fact that the authority issue was still being litigated as of March 31, 2023. (*See* D.I. 36 at 17-18). It unclear how that helps his challenge to Count X. The eventual ruling confirmed there was no genuine dispute as to the material issue of authority.

10 Ravindran's criticism of *Gulf Aviation* lends little support. (*See* D.I. 26 at 40-41; D.I. 36 at 18). Only the corporation was held liable, but no directors or officers were sued.

basis that they had not had the opportunity to take any meaningful discovery of the Debtor. Defendants argued that the Bankruptcy Court should deny the SJ Motion pursuant to Federal Rule of Civil Procedure 56(d), which states that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court ***may***: (1) defer considering the motion or deny it; (2) allow time to . . . take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d) (emphasis added). Defendants cite various decisions for the well established proposition that, because summary judgment can be supported or defeated by citing a developed record, courts must give the parties adequate time for discovery. (*See e.g.,* D.I. 26 at 22-23). Indeed, courts usually grant properly filed requests for discovery under Rule 56(d) as a matter of course. *Murphy v. Millenium Radio Grp.*, 650 F.3d 295, 309-10 (3d Cir. 2011). That said, a party seeking further time for discovery under Rule 56(d) must submit an "adequate affidavit or declaration," which is one that specifies "what particular information is sought; how, if disclosed, it would preclude summary judgment; and why it has not been previously obtained." *Shelton v. Bledsoe,* 775 F.3d 554, 568 (3d Cir. 2015) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 140 (3d Cir. 1988)). The Bankruptcy Court determined that "[n]one of the declarations submitted in support of the Defendants' respective 56(d) motions satisfy these requirements." (SJ Op. at 11). On appeal, Defendants assert that discovery was "ongoing," but do not identify any specific evidence that was material to the claims and defenses or demonstrate that they had good reason not to obtain such evidence.

### 1. <u>Summary Judgment Was Not Premature as to Camshaft</u>

Camshaft submitted a declaration from its counsel in support of its Rule 56(d) argument (A10253-57) ("Van Tol Declaration"). As to "why [discovery] has not previously been obtained," *Shelton,* 775 F.3d at 568, Camshaft had "not yet served any discovery requests . . . because it has filed motions to dismiss the Chapter 11 case and the adversary proceeding," and, in the event that it did

not prevail on the motions, the Camshaft Defendants "will serve their own discovery requests." (*Id.* ¶ 12). As to the "particular information . . . sought" and "how, if disclosed, it would preclude summary judgment," *Shelton,* 775 F.3d at 568, Camshaft indicated it would seek discovery from parties that "have information regarding the Initial Transfer and related transactions and, as such, . . . are vital to the Camshaft Defendants' defenses to the claim in Count I." (*Id.* ¶ 13). The Bankruptcy Court held that Camshaft offered only "vague statements about what discovery was needed" and "did not explain with specificity how the information sought would preclude summary judgment." (SJ Op. at 12).

Camshaft argues on appeal that the Van Tol Declaration contained "facts and specific discovery requests" as well as "outstanding subpoenas for documents and depositions," which information was sufficient to meet the requirements of Rule 56(d)." (D.I. 27 at 32). Apart from the assertions contained in paragraph 12 and 13, the Van Tol Declaration identifies only Plaintiffs' open discovery requests. (Van Tol Decl. ¶¶ 3-10). According to Camshaft, its declaration further established that it was in the middle of conducting depositions and collecting discovery and had a pending motion to compel further discovery and a continued deposition from Pohl, but that the SJ Opinion "ignored" this information. (*See* D.I. 27 at 37-38). This information does not appear in the Van Tol Declaration, as the discovery cited by Camshaft in its opening brief was served thereafter.

That discovery is underway is not enough to delay summary judgment—even if the discovery Camshaft belatedly sought was ongoing. *See Molina v. Harry*, 2023 WL 3055219, *2 (3d Cir. Apr. 24, 2023) (affirming summary judgment for defendant while discovery was ongoing because plaintiff failed to specify the evidence he hoped to obtain and how it would create genuine issue of material fact); *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256-57 (3d Cir. 2007) (requested discovery must be material to claims or defenses, not just ongoing). As to Camshaft's discovery, which was ongoing at the time of oral argument, Camshaft failed to explain with specificity how the information sought

would preclude summary judgment. (SJ Op. at 12). Camshaft never explained, for example, *why* the discovery would preclude summary judgment, other than asserting the discovery "is relevant to Movants' claims in this proceeding." (Von Tol Decl. ¶¶ 12-13). Even on appeal, Camshaft does not explain with specificity how the requested information would "assist Camshaft's defense" or what information, specifically, was needed "concerning the transactions." (D.I. 27 at 34-35). Such "[v]ague or general statements of what a party hopes to gain through a delay for discovery under [Rule 56(d)] are insufficient." *Atl. Deli & Grocery v. U.S.*, 2011 WL 2038758, *3 (D.N.J. May 23, 2011) (denying Rule 56(d) discovery request where affidavit satisfied only one of three *Dowling* requirements).

### 2. <u>Summary Judgment Was Not Premature as to Ravindran</u>

Ravindran submitted a declaration from its counsel in support of its Rule 56(d) argument (A10846-50) ("the Korpus Declaration"). As to "why [discovery] has not previously been obtained," *Shelton,* 775 F.3d at 568, the declaration explained that no discovery had been taken as of the filing of the SJ Motion based on the Contempt Order's determination that Ravindran would be precluded from arguing that the Alpha Funds were transferred for a proper purpose, which "renders futile any attempt by Ravindran to seek affirmative discovery to oppose the [SJ] Motion," but in the event Ravindran prevailed in his appeal of the Contempt Order, he "intend[ed] to seek discovery that will establish a number of defenses to the claims made against him." (Korpus Decl. ¶¶ 1-9).

Rule 56(d) requires explanation for why discovery "has not previously been obtained," not speculation about what could happen in a hypothetical future. Fed. R. Civ. P. 56(d). The Contempt Order limited certain arguments Ravindran could make about the purpose of the fraudulent transfers, not his ability to make document requests or take depositions.[11] This Court agrees that Ravindran's

---

[11] The Contempt Order, the appeal of which was dismissed with prejudice, provides that "Ravindran is precluded from asserting in this Adversary Proceeding that the Alpha

then-pending appeal of the Contempt Order did not excuse his discovery obligations, and the Korpus Declaration makes clear that nothing prevented him from seeking the discovery he now claims was needed to oppose summary judgment. (D.I. 26 at 24). As the Bankruptcy Court explained, the argument "that [Ravindran] did not previously obtain the discovery needed because doing so would be futile directly contradicts the remainder of his argument: that there is specific discovery he requires to oppose the Motion." (SJ Op. at 11).

On appeal, Ravindran asserts that the Bankruptcy Court "misconstrued [his] Rule 56(d) arguments" by "focusing on [his] futility argument, and holding that it could not be squared with [his] claim that discovery relating to the issues raised in the SJ Motion was necessary." Ravindran's briefs do not address the inherent contradiction in his position, nor do they identify an abuse of discretion in the Bankruptcy Court's rejection of such contradictory arguments. (D.I. 26 at 25). This Court agrees that the Korpus Declaration failed to identify with any specificity the "particular information . . . sought" or explain "how, if uncovered, it would preclude summary judgment," *Shelton,* 775 F.3d at 568. The declaration specified no particular documents, generally asserting that, upon prevailing on his appeal of the Contempt Order, Ravindran would seek discovery from (1) GLAS for the purpose of "establish[ing] that Ravindran did not breach his duties . . . by taking direction from T&L in authorizing the transfers and relying on the diligence of T&L" (*id.* ¶ 10); (2) the Lenders, for the purposes of showing "their knowledge of the purposes of the term loans," "the lack of any relevant restrictions," and that they "approved of the transfers related to the Alpha Funds" (*id.* ¶¶ 11, 15); and (3) "parties to the credit agreement" to show they "intended for the borrowers to be able to invest as they see fit, without any direction or oversight from lenders" (*id.* ¶ 14). These statements do not

---

Funds . . . were transferred from the Debtor to Camshaft Capital Fund LP and, subsequently, from Camshaft Capital Fund LP to Inspilearn LLC, for a proper purpose." (Adv. D.I. 204 ¶ 5).

identify any particular information or explain with specificity how the information sought would preclude summary judgment. As the Bankruptcy Court observed, contractual compliance is not a defense to fraudulent transfer. (MTD Order at 12 (citing *In re EBC I Inc.*, 356 B.R. 631, 640 (Bankr. D. Del. 2006) ("A transfer may be fraudulent even if it is made in accordance with the terms of a contract between the parties.")).

Finally, Ravindran argues that the Bankruptcy Court erroneously ignored that Camshaft's ongoing discovery "would have derivatively assisted in Ravindran's defense." (D.I. 26 at 25). But aside from noting at oral argument that "Camshaft is in the middle of taking discovery right now," (A12367-68), Ravindran did not raise "with specificity" how Camshaft's sought-after discovery "would preclude summary judgment" as to him, or why *he* had not "previously . . . obtained" that discovery himself. *Dowling*, 885 F.2d at 140.

Contrary to Ravindran's assertion, the Bankruptcy Court did not "disregard[]" his "showing on the discovery he would take," but simply concluded Ravindran's showing was insufficient under Rule 56(d). This Court discerns no abuse of discretion in the Bankruptcy Court's ruling.

### B. Defendants' Challenge to the Bankruptcy Court's Authority to Issue the Summary Judgment Decision is Rejected

On January 29, 2025, Judge Dorsey ordered that "the above captioned Chapter 11 case (and all jointly administered cases, associated cases and associated adversary proceedings) is TRANSFERRED to the Honorable Brendan Linehan Shannon for all further proceedings and dispositions." (Bankr. D.I. 325). Judge Dorsey entered the same order in the adversary proceeding on February 25, 2025. (Adv. D.I. 381). On February 27, 2025, the SJ Opinion signed by Judge Dorsey was issued. (Adv. D.I. 383).

Ravindran argues for the first time on appeal that the Bankruptcy Court "violated the District Court's Local Rule 40.1(a) and exceeded its authority by issuing the SJ Opinion." (D.I. 26 at 20-22).

Local Rule 40.1 simply states: "Each case will be assigned to a Judge. All matters pertaining to a case will be heard by the Judge to whom it has been assigned, unless otherwise ordered." D. Del. L.R. 40.1(a). Ravindran argues "[t]he reassignment meant that Judge Dorsey lacked the authority to issue the [SJ] Opinion," and that "[u]nder similar circumstances, the courts have held that orders issued without authority are a legal nullity." (D.I. 26 at 17, 21-22) Ravindran urges this Court to hold that the SJ Opinion "has no effect," and to hold, "by the same token, the Judgment Order—which implements the findings and conclusions from the SJ Opinion—has no legal effect." (D.I. 26 at 17, 22). Plaintiffs counter that this argument is forfeited, as "[a]llowing Ravindran to present this claim *seven months* after the Bankruptcy Court issued the [SJ Opinion] would undermine the important principles the preservation rule seeks to protect and encourage the gamesmanship and delay tactics Ravindran has engaged in throughout this case." (D.I. 33 at 18).

Defendants counter that the appeal was their first opportunity to raise the challenge. It is worth noting that Defendants did not question Judge Dorsey's authority to issue the SJ Opinion in their motion for reconsideration or amendment of the Judgment, or otherwise. Indeed, Defendants objected to Plaintiffs' proposed form of judgment because it differed from "*what Judge Dorsey contemplated*" in the summary judgment decision. (A12771) (emphasis added). Only months later did the Defendants challenge his authority to rule. The Third Circuit has expressly declined to "excuse [a] lack of timeliness" and consider unpreserved issues like this one that are premised on a court's purported "lack[ of] authorization" to adjudicate an issue. *Prosser*, 2024 WL 1230148, at *3-4 (declining to consider forfeited "challenge to the validity of the transfer of a bankruptcy judge to sit" in the court in which the proceeding was held).

Assuming the timeliness of the argument, a judge's lack of "authority to issue a dispositive order in a case that was assigned to another judge" does not, "standing alone . . . compel reversal." *Vanterpool v. Gov't of Virgin Islands*, 63 V.I. 563, 575 (2015). Unlike this case, where the bankruptcy

judge who long presided over the case issued a ruling, the judge in *Vanterpool* issued a case dispositive order in the interim period between one judge's last day on the bench and a new judge's first day, which did not compel reversal. *See id*. at 575. Unlike the decisions cited by Defendants, this is not a circumstance where the court never had the authority to rule; Judge Dorsey long presided over this case, heard oral argument, and drafted and signed the SJ Opinion within days of reassignment. That the "docket sheet maintained by the Clerk . . . reflects that the case was formally reassigned . . . [two] days earlier" is, at most, a ministerial deviation from the local rule. *Id*. at 575. In any event, the substance of the SJ Opinion was adopted and ratified by Judge Shannon in the Judgment, and this Court rejects Defendants' suggestion that any harmless error in the timing of the issuance of the SJ Opinion requires reversal, which would serve no "practical consideration[] concerning efficient judicial administration." *Hansen v. O'Reilly*, 2015 WL 122257, *510 (V.I. Jan. 8, 2015). Defendants identify no such consideration.

### C. Defendants Identify No Basis to Disturb the Judgment

#### 1. The Bankruptcy Court Properly Rejected Defendants' Due Process Argument

Defendants argue that the Bankruptcy Court "erred" and "violated due process" when it "reversed course" and "*sua sponte* entered partial summary judgment on damages," without holding an evidentiary hearing. (*See* D.I. 26 at 41-52; D.I. 27 at 53-54 (incorporating Ravindran's argument by reference)). Defendants argue that Courts may not enter summary judgment *sua sponte* unless they first provide notice and an opportunity for the opposing party to be heard. (*Id.*).

As Plaintiffs point out, Rule 56(f) requires notice before entering summary judgment *sua sponte* only if the court is "(1) grant[ing] summary judgment for a nonmovant; (2) grant[ing] the motion on grounds not raised by a party; or (3) consider[ing] summary judgment on its own." Fed. R. Civ. P. 56(f). None of those situations existed here. The Bankruptcy Court entered judgment in Plaintiffs' favor on grounds raised and extensively briefed on summary judgment. Indeed,

Defendants concede that Plaintiffs' SJ Motion placed the damages issue squarely before the Court, and Plaintiffs relied on the summary judgment record as the basis for their requested relief. (D.I. 26 at 14; *see* A12516-28). As the Bankruptcy Court observed in denying reconsideration, "Defendants have been afforded extensive opportunities throughout this case to contest the valuation which is based on the Defendants' own documentation." (Amendment Denial Order at 7). That is far from *sua sponte* action in which a party had no opportunity to be heard. The Bankruptcy Court likewise properly exercised its discretion not to allow Defendants to cause "further delay," having "initiated at least two more fraudulent transfers" since these proceedings began and "continuously avoiding discovery to keep millions of dollars hidden from the Plaintiffs and the Court." (*Id.* n.15).

The cases cited by Defendants confirm that Rule 56(f) does not apply. (*See* D.I. 26 at 41-43). In *Forrest v. Parry*, 930 F.3d 93 (3d Cir. 2019), the Third Circuit reversed a *sua sponte* grant of summary judgment to the defendants in connection with a motion *in limine* because the court had not provided notice and an opportunity to be heard. *Id.* at 112. Here, by contrast, the Bankruptcy Court issued a decision and then entered the corresponding judgment based upon a fully briefed motion and the extensive record in support. In any event, Defendants had the opportunity to fully brief any perceived issues with the Judgment in seeking reconsideration, rendering their Rule 56(f) argument moot. *See Dobrich v. Indian River Sch. Dist.*, 432 F. Supp. 2d 445, 448 (D. Del. 2006) (because movant "briefed the relevant legal issues in the instant Motion for Reconsideration," his "contention that he has been denied the opportunity to fully present the issue[s] … is moot.").

Defendants further assert that the Bankruptcy Court was required to conduct a "hearing on damages." (D.I. 26 at 43). The SJ Opinion concludes with a procedural scheduling directive: "The parties should submit a joint proposed order under certification of counsel. If unable to agree on the amount of the judgment, the parties should meet and confer regarding a briefing schedule and dates for an evidentiary hearing on the issue of damages." (SJ Op. at 43). It nowhere stated that additional

briefing or an evidentiary hearing on damages was necessary. (*Id.*). Such an interlocutory procedural order was "always subject to modification by the Court, either *sua sponte* or on motion of any party." *In re Mariner Post-Acute Network, Inc.*, 257 B.R. 723, 727 (Bankr. D. Del. 2000).

Plaintiffs' submission requested relief for each cause of action addressed in the SJ Opinion, with citations to the record and prior briefing that supported the relief sought. (A12516-650). Plaintiffs' submission also noted that "the issue of damages in this case [was] straightforward because, for example, the amount of the Fraudulent Transfers in 2022 and 2023 were uncontested." (A14443). And although Plaintiffs were not opposed to an expedited briefing schedule (A14444), Defendants sought further delay. This Court discerns no abuse of discretion in the Bankruptcy Court's decision to enter the Judgment based on the existing record.

### 2. **<u>Defendants Identify No Reversible Error in the Judgment</u>**

Defendants contend that the Judgment has "at least three sets of errors," none of which were raised in opposition to the SJ Motion. (D.I. 26 at 45; D.I. 27 at 53-54).

#### a. **<u>The Judgment Does Not Authorize Double Recovery</u>**

Defendants argue that there is "impermissible overlap" in the damages awarded for Counts I, IV, and X. (D.I. 26 at 46-49). As Plaintiffs point out, section 550 of the Bankruptcy Code "authorizes the Trustee [or debtor in possession] to pursue recovery from all available sources until the full amount of unlawfully transferred Estate property is fully realized for the Estate's creditors." *In re Belmonte*, 931 F.3d 147, 154 (2d Cir. 2019); *see Freeland v. Enodis Corp.*, 540 F.3d 721, 740 (7th Cir. 2008) ("The trustee [or debtor in possession] can recover from any combination of the entities mentioned [in Section 550] subject to the limitation of a single satisfaction."). Here, "all available sources" includes each of the Defendants. For example, the court in *Toy King* awarded over $5 million against multiple defendants even though the maximum amount the plaintiff could recover was $2.9 million. *In re Toy King Distributors, Inc.,* 256 B.R. 1, 210 (Bankr. M.D. Fla. 2000). And

although the court in *Perry H. Koplik & Sons* recognized the general principle that multiple *recoveries* are not permitted, it ruled that "separate judgment awards should be entered on each theory" in the same amount for breach of fiduciary duty and fraudulent transfer. 476 B.R. 746, 793 (Bankr. S.D.N.Y. 2012), *adopted in part*, 499 B.R. 276 (S.D.N.Y. 2013), *aff'd* 567 F. App'x 43 (2d Cir. 2014).

Moreover, any concern about double recovery is premature because no Defendant has satisfied the judgment. The Bankruptcy Court correctly concluded that if and when that happens, Defendants may seek appropriate relief. (Amendment Denial Order at 4). *See, e.g.*, Fed. R. Civ. P. 60(b)(5); Fed. R. Bank. P. 9024(a). Until then, Defendants' argument is unripe. *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 219 (3d Cir. 1992) (endorsing plaintiffs' pursuit of damages under multiple causes of action even though it may "only recover *once* for compensatory damages"); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2024 WL 1797362, *2 (D. Del. Apr. 25, 2024) (double recovery argument "not ripe for adjudication" as nothing had been collected).

Ravindran also mistakenly contends (D.I. 26 at 48) that the damages awarded against him for conversion are "incomplete" and "unfair[]" because the judgment names only him, not T&L. Paragraph 6 states that both Ravindran and T&L are liable for the conversion of the Camshaft LP Interest. (Judgment ¶ 6). Until the Judgment is satisfied, Ravindran remains liable for the full amount.

**b. Defendants Failed to Contest the Amount of Damages Despite Numerous Opportunities**

Defendants further assert that the $540,647,109.20 damages award is unproven and disputed. (D.I. 26 at 49). Defendants concede, however, that the issue of damages was squarely presented on summary judgment. And despite receiving Plaintiffs' calculations and evidence and having opportunities to respond in briefing and at oral argument, Defendants never meaningfully contested the damages amount, leaving no triable issues. "Having failed to preserve this issue," Plaintiffs assert,

"Appellants cannot now manufacture a dispute—particularly where the damages award is based on uncontested calculations and Defendants' own valuation of the Camshaft LP Interest." (D.I. 33 at 53 (citing A07121; SJ Op. at 31; A12846-47)). The Court agrees. Defendants suggest that the damages figure must be verified through testimony from Apex, administrator of Camshaft Fund. (*See* D.I. 26 at 49-50). In April 2024, the Bankruptcy Court stated it lacked sufficient evidence for sanctions "without further information including a deposition of Mr. Morton and perhaps Apex." (A10374-75). Thereafter, the Debtor deposed Morton and obtained discovery (including from Apex). Having failed to dispute the valuation of the Camshaft LP interest despite multiple opportunities, Defendants cannot obtain reversal by arguing that they "*planned* to contest the damages issues" and that the Bankruptcy Court "fail[ed]" to consider an argument that they bore the burden to raise but did not.

Defendants' appeals identify no errors in the Bankruptcy Court's valuation of the Camshaft LP Interest as of the March 31, 2023 transfer date. At most, they make fleeting reference to "set off amounts" between the Debtor and OCI Limited as affecting the valuation of the Camshaft LP Interest. (D.I. 26 at 49). But Defendants never raised this argument at summary judgment and never attempted to marshal any evidence in support of the theory. In fact, Ravindran submitted public statements from T&L stating that the BYJU's "group entities remained (and continue to remain) the beneficial holders of [the Alpha Funds]"—all inconsistent with Defendants' position. (A01980). Moreover, in response to the Debtor's document requests from April 2024, Ravindran refused to produce "Documents and Communications concerning the Camshaft LP Interest . . ." (A06997-7000). Because of those discovery violations, the Bankruptcy Court ruled that "Ravindran may be precluded from disputing any issue of fact raised in connection with any motion(s) for summary judgment." (A10450). Ravindran may not claim the funds still exist, withhold all evidence regarding the valuation of the Camshaft LP Interest, including evidence that would test that assertion, stay silent through summary judgment, and then invoke theoretical challenges for the first time on appeal.

### c. Prejudgment Interest Was Properly Awarded

Finally, Defendants argue the Bankruptcy Court abused its discretion by failing to hold an evidentiary hearing regarding pre-judgment interest. (D.I. 26 at 51). Neither the Bankruptcy Rules nor the Rules of Civil Procedure require such a hearing, as Defendants' cited authority confirms. *See Drivetrain, LLC v. DDE Partners, LLC*, 2024 WL 740290, *2 (Bankr. D. Del. Feb. 22, 2024) (awarding prejudgment interest without hearing); *In re Opus E., LLC*, 528 B.R. 30 (Bankr. D. Del. 2015), *aff'd* 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd* 698 F. App'x 711 (3d Cir. 2017) (awarding prejudgment interest after trial); *In re Centaur, LLC*, 2019 WL 2122952, *4 (Bankr. D. Del. May 13, 2019) (awarding prejudgment interest after written submissions on issue).

Moreover, Defendants identify no factual dispute requiring an evidentiary hearing. "The point of prejudgment interest is to compensate the estate for the loss of the funds from the time it made its demand through the date of judgment." *Drivetrain*, 2024 WL 740290, at *2. Here, it is undisputed that Defendants deprived the Debtor of the Alpha Funds. This undisputed fact alone is sufficient to award prejudgment interest, and Defendants identify no abuse of discretion in the amount or rate awarded here. *See Galderma Lab'ys, L.P. v. Medinter US LLC,* 2024 WL 456790, *1 (D. Del. Feb. 5, 2024); *New Start Holdings, LLC v. Zhou*, 2024 WL 4039440, *28-29 (Del. Ch. Sept. 4, 2024).

In sum, Defendants have identified no error in the calculation of damages or pre-judgment interest, which are well grounded in the record (including Defendants' own evidence) and the law.

### D. The Issues Raised in Supplemental Briefing Do Not Require Reversal

Ravindran asserts the Bankruptcy Court's Judgment is premised on findings that conflict with the Bankruptcy Court's Default Order against Byju Raveendran in the Byju Proceeding. (D.I. 43 at 2).[12] Ravindran argues that that the Default Order holding Byju Raveendran liable for breaching his

[12] On April 9, 2025, the Debtor filed an adversary proceeding, *BYJU's Alpha, Inc. v. Byju Raveendran et al.*, Adv. Pro. No. 25-50526-BLS (Bankr. D. Del.) ("Byju Proceeding"). On

fiduciary duties to the Debtor in connection with the Second Transfer "contradicts or fatally undermines" the Judgment holding Ravindran liable for breaching his own duties to the Debtor in connection with both the First and Second Transfers. He appears to argue that two people cannot be held liable for breaching their fiduciary duties to the same entity with respect to the same transaction.

There is nothing inconsistent in the Judgment, the SJ Opinion on which it is based, or any of the Bankruptcy Court's opinions or orders issued in the Byju Proceeding. To the contrary, the Bankruptcy Court expressly acknowledged in its SJ Opinion that "the individuals who directed the Second Transfer" were "Byju Raveendran ***and*** [Riju] Ravindran." (SJ Op. at 40 (emphasis added); *id.* at 6 (referring to Byju as the Debtor's "self-appointed CEO"). The Bankruptcy Court thus found Ravindran liable while fully aware of Raveendran's role in the transfer. (A07097). There is also nothing remarkable about the Bankruptcy Court ultimately holding both Rivandran and Byju liable for breaching their separately owed fiduciary duties to the Debtor for their roles in the Second Transfer. Multiple defendants can be liable for breach of fiduciary duty in connection with the same underlying transaction.[13] *See, e.g.*, *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 565 (Bankr. D.

---

December 8, 2025, the Bankruptcy Court entered an order of default ("the Default Order") in the Byju Proceeding in which it found that Raveendran is liable for the Second Transfer in violation of a fiduciary duty that Raveendran owed to the Debtor. (*Id.*, Adv. D.I. 167).

13 Ravindran has never contested that he was the Debtor's sole director and an officer from September 2021. (SJ Op. at 35-36). As such, he owed the Debtor fiduciary duties of care and loyalty, the latter of which incorporates the duty to act in good faith. *See In re Pattern Energy*, 2021 WL 1812674, at *46. Plaintiffs' breach of fiduciary duty claim against Ravindran arose out of "his abdication of all decision-making to the Debtor's parent, T&L," which dereliction of duty constituted both a breach of the duty of care and good faith." (SJ Op. at 35, 39). And although Ravindran was removed as a director and officer of the Debtor as of March 3, 2023, he is nevertheless liable for his role in causing the Second Transfer, the "process" for which began as early as October 2022. (A03069). Indeed, a former director and officer remains liable for breach of fiduciary duties where he or she, as here, "engages in transactions that had their inception *before* the termination of the fiduciary relationship or founded on information acquired *during* the fiduciary relationship." *BelCom, Inc. v. Robb*, 1998 WL 229527, at *3 (Del. Ch. Apr. 28, 1998) (emphasis in original). Byju Raveendran was held liable for aiding and abetting Ravindran's breaches with respect to the First and Second Transfers, and for

Del. 2008) (sustaining breach of fiduciary duty claims against multiple fiduciary defendants arising from the same sale process). Ravindran and Byju breached independent duties they owed to the Debtor in their distinct roles as Debtor's sole director and an officer at the time the fraudulent transfer process was initiated (Riju Ravindran) and as the Debtor's purported CEO (Byju Raveendran).[14]

## IV. CONCLUSION

The Bankruptcy Court's SJ Opinion rests on undisputed facts, well-established precedent, and multiple claims that independently support the judgment against Defendants for over $533 million. Defendants identify no error, let alone one warranting reversal. For the reasons set forth herein, the Orders will be affirmed. An appropriate order will be entered.

---

breaching his own duties to the Debtor, which he owed having signed the agreement effecting the Second Transfer as its CEO. (A07097). Even if Byju Raveendran was never formally the Debtor's CEO, "formality is not required for fiduciary status." *Harris v. Harris*, 289 A.3d 310, 332 (Del. Ch. 2023); *cf. WaveDivision Holdings, LLC v. Millennium Digital Media Sys., L.L.C.*, 2010 WL 3706624, at *3 (Del. Ch. Sept. 17, 2010) (individual who is not a formal manager, officer, or employee of an LLC nevertheless acted as manager of the LLC and therefore owed fiduciary duties).

14 Any additional arguments raised in the letter briefs not otherwise addressed herein are denied on the merits.